**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ERIC KUHN

        Plaintiff,

v.
                                         Case No. 10-11191
                                         Honorable Denise Page Hood

WASHTENAW COUNTY, and
LIEUTENANT JAMES ANUSZKIWICZ,
individually and in his official capacity,
jointly and severally,

        Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION TO REOPEN DISCOVERY AND DISMISSING THIS ACTION WITH PREJUDICE

**I.    BACKGROUND**

On March 25, 2010, Plaintiff Eric Kuhn ("Kuhn"), an African American, filed the present action against Defendants Washtenaw County and Lt. James Anuszkiwicz. Against the County only, Kuhn alleges Retaliatory Discharge under 42 U.S.C. § 1983 (Count I), violation of Michigan Whistleblower Protection Act, M.C.L. § 15.631 (Count II), employment termination without due process (Count III), and retaliation in violation of Title VII (Count VI). Against Lt. Anuszkiwicz only, Kuhn alleges tortious interference with business expectancy (Count V). Against both the County and Lt. Anuszkiwicz, Kuhn alleges racial discrimination in violation of 42 U.S.C. § 1981 (Count IV), racial discrimination and harassment in violation of Title VII (Count VIII), and racial discrimination and harassment in violation of Michigan Civil Rights Act (Count IX).

The present action follows Kuhn's termination from the Washtenaw County Sheriff's Office in January 2010. On October 20, 2008, Kuhn stopped Marianne Joseph for a traffic violation (Def.'s Ex. 1). Joseph exited her vehicle and fled the scene. *Id.* Deputies Holly Farmer and Charles Hunt provided backup (Pl.'s Ex. 5). Deputy Hunt was the first to contact Joseph and arrested her in a nearby neighborhood. (Def.'s Ex. 1, Pl.'s Ex. 5). While in the squad car, Joseph threatened to report that Kuhn raped her and indicated that her claims would be believed because she was white and Kuhn was African American. (Def.'s Ex. 1).

Sgt. Marlene Radzik spoke with Joseph, who alleged that Kuhn raped her (Def.'s Ex. 1; Pl.'s Ex. 1). After Sgt. Radzik spoke with Joseph and Kuhn and reviewed the in-car video, she concluded that the rape did not occur and reported so to Lt. Anuskiewicz. (Def.'s Ex. 1, 19, 20; Pl.'s Ex. 1). Lt. Anuskiewicz instructed Sgt. Radzik to contact the Michigan State Police.[1] *Id.* Defendants allege that Sgt. Radzik was unable to contact the State Police and Lt. Anuskiewicz indicated that he would follow up if necessary. (Def.'s Ex. 19, 20). Lt. Anuskiewicz reported to Sgt. Radzik that there was no need to contact Michigan State Police and instructed Sgt. Radzik to file a police report against Joseph for filing a false police report, initiate an internal service complaint, and prepare a one-page memo of allegations and actions taken. (Def.'s Ex. 21).

After Joseph went to the hospital reporting rape and a rape kit was completed and logged into evidence, Lt. Anuskiewicz was instructed to process the rape kit, which was sent to the State Police for analysis. (Def.'s Ex. 24). Judi Swidan, property officer, prepared the paper work for

---

[1] Defendants allege that they were required to open and complete an internal investigation according to Washtenaw County Sheriff's Office Policy and Procedure IV, which reads "[t]he Washtenaw County Sheriff's Office will accept and investigate all complaints about the conduct of its employees from any citizen…Following a thorough and impartial examination of the available factual information, it will be determined if improper employee conduct did in fact occur." Section V.B.2.d.(1) further indicates that any allegation of improper conduct will be investigated regardless of its apparent validity. (Def.'s Ex. 17). A citizen's complaint receives a specific number and cannot be voided once issued. (Def.'s Ex. 17). Defendants allege that an internal investigation is separate from a criminal investigation pursuant to the citizen's complaint policy. Any criminal investigation pursuant to citizen's complaint must be investigated by an outside agency. (Def.'s Ex. 18).

the rape kit to be sent to the State Police for analysis (Def.'s Ex. 25; Pl.'s Ex. 7). Kuhn alleges that Lt. Anuskiewicz directed Swidan to list Kuhn as the suspect. (Pl.'s Ex. 6). In November 2008, the State Police analysis of the rape kit was negative for sexual assault. (Pl.'s Ex. 8). The submitting officer, Judi Swidan, listed Kuhn as a suspect on the Submission report and citizen's complaint. (Pl.'s Ex. 7).

On December 6, 2008, Kuhn requested a meeting with Lt. Anuskiewicz and Commander Hall-Beard regarding his concerns. (Def.'s Ex. 28). Commander Hall-Beard responded on December 7, 2008 that she and Lt. Anuskiewicz were available to meet. (Def.'s Ex. 31). Commander Hall-Beard indicated in her email that Kuhn was not under any internal investigation or had been charged with any policy violation. *Id.* Sgt. Radzik informed Commander Hall-Beard that a citizen's complaint had been initiated against Kuhn. (Pl.'s Ex. 9). Kuhn and his union representative canceled the meeting. (Def.'s Ex. 32). Commander Hall-Beard later emailed Lt. Anuskiewicz asking why a citizen's complaint was opened. (Def.'s Ex. 34; Pl.'s Ex. 10). After indicating that their understanding of the policy were different, Commander Beard-Hall directed Lt. Anuskiewicz to stop further action. *Id.* Before Commander Beard-Hall stepped down as Commander, she submitted paperwork to have the complaint against Kuhn closed. (Pl's Ex. 13).

Dieter Heren assumed the position of Commander on January 1, 2009. Per Lt. Anuskiewicz's request, Sgt. Radzik forwarded her report on Kuhn to Heren. (Pl.'s Ex. 1). Commander Heren directed Sgt. Radzik to complete an internal investigation of Kuhn on January 2, 2009. (Def.'s Ex. 35). Commander Heren emailed Kuhn on March 4, 2009 to inform him that the internal investigation was closed and sent a memo on March 18, 2009. (Def.'s Exs. 7, 35). On March 18, 2009, Kuhn filed a complaint against Lt. Anuskiewicz for unprofessional

behavior. (Def.'s Ex. 36). Under Sheriff Ptaszek assigned Commander Heren to the investigation. (Pl.'s Ex. 4, pp. 10-11).

Kuhn began treating with Dr. LaMaurice Garnder, a psychologist, in February 2009. (Pl.'s Ex. 16). Kuhn requested medical leave beginning on May 30, 2009 based on stress. Kuhn's primary care physician provided a letter stating that Kuhn was excused from work from May 30, 2009 until June 21, 2009. (Def.'s Ex. 39). Kuhn's request was approved on June 12, 2009. (Def.'s Ex. 40).

On June 23, 2009, Kuhn emailed Under Sheriff Ptaszek requesting additional leave. (Def.'s Ex. 41). His physician indicated that he could not return to work until August 3, 2009. *Id.* He provided a second letter stating that he could not return to work until October 4, 2009. (Def,'s Ex. 42). He was approved for leave until August 29, 2009.

On July 23, 2009, Kuhn emailed Union President Harry Valentine and several others indicating that he was "aware of several incidents involving other deputies who were ignored, mistreated, unfairly targeted and denied advancement because they spoke up about misconduct." (Pl.'s Ex. 18). Kuhn also indicated that he dealt with racial issues while working in Salem Township and was reassigned to West Willow in Ypsilanti Township because he was African American. *Id.*

On August 28, 2009, Kuhn requested to be placed on paid administrative leave pending the completion of the investigation and approval of his return to work from his medical doctor. (Def,'s Ex. 44). Under Sheriff Ptaszek approved Kuhn for unpaid leave in accordance with Article 21.1 of the collective bargaining agreement. (Def.'s Ex. 45). On August 29, 2009, Michelle Murray, the County's Benefit Manager, advised Kuhn by letter that he had exhausted his 12 weeks of FMLA leave. (Def.'s Ex. 43).

On August 28, 2009, Kuhn emailed County Administrator Bob Guenzel with a similar email as that he sent to the Union President. (Def.'s Ex. 46). At the time of this email, Under Sheriff Ptaszek or Commander Dieter, who were both copied on the original email, had not responded. In the August 2009 email, Kuhn reported that he has "seen first hand several incidents involving other deputies who were ignored, mistreated, unfairly targeted, or denied advancement because they spoke up about misconduct." *Id.* Kuhn also stated that he was fearful of the administration and the influence they had over a person's career. *Id.* The email was forwarded to the County's Risk Manager Judy Kramer and she contacted Kuhn to arrange a meeting to address his concerns. (Def.'s Ex. 47, 48). Kuhn met with Under Sheriff Ptaszek, Judy Kramer, and Diane Heidts on September 10, 2009. Defendants allege that Ms. Heidt told Kuhn during this meeting that a medical release was required before Kuhn could return to work. Kuhn denies receiving this instruction.

On October 5, 2009, Kramer sent Kuhn an email regarding his rights under the Whistleblowers Protection Act and a copy of the Act. (Def.'s Ex. 48). Defendants allege that they made several attempts to gather information from Kuhn regarding his investigation but were refused. (Def.'s Ex. 8). On November 16, 2009, Under Sheriff Ptaszek emailed Kuhn to inform him that the investigation of Lt. Anuszkiewicz was complete and to arrange his return to work. *Id.* Kuhn forwarded a doctor's note stating that he could not return to work until January 3, 2010. (Def.'s Exs. 8, 10). The Under Sheriff granted the additional request but informed Kuhn that the additional leave was "extraordinary" and he did "not envision extending any further." (Def.'s Ex. 8).

On December 11, 2009, Kuhn emailed Sheriff Clayton stating that he was excused from work by a doctor until March 31, 2010 and wanted to request additional leave. (Def.'s Ex. 9).

Under Sheriff Ptaszek emailed Kuhn on December 30, 2009 advising Kuhn that his "employment with the Washtenaw County Sheriff's Office will terminate effective Monday January 4th, 2010." (Def.'s Ex. 11). Kuhn's Union representative, Robert Losey, "strongly encourage[ed]" that Kuhn, "if…at all possible…return to work on January 3rd, 2010." (Def.'s Ex. 12). On January 4, 2010, Kuhn's attorney sent a letter informing Under Sheriff Ptaszek that "Kuhn will not be reporting to duty." (Def.s Ex. 14).

## II.   ANALYSIS

### A.   Standard of Review

#### 1.   Motion for Summary Judgment

Summary judgment under Rule 56(a) is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (U.S. 1986). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974).  The Court must consider the admissible evidence in the light most favorable to the non-moving party.  *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added).  To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact.  Any dispute as to a material fact must be established by affidavits or other documentary evidence.  Fed. R. Civ. P. 56(c).  "If the

[nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).  Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  *Scott*, 550 U.S. at 380.

### 2.    Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs*, 510 F.3d 631, 634 (6th Cir. 2007). To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

### B.    Section 1983

To maintain an action under 42 U.S.C § 1983, a plaintiff must demonstrate that he or she was deprived of a right guaranteed by the Constitution or laws of the United States by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978).  Municipalities

may also be held liable under section 1983. *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690

(1978).  A municipality may only be held responsible under §1983 for an official policy,

practice, or custom that causes a constitutional injury. *Id.* at 690; *Pembaur v. City of Cincinnati*,

475 U.S. 469, 480-81 (1986).  The policy must be the "moving force" behind the violation.

*Monell*, 436 U.S. at 694.  In fact, "a plaintiff must 'identify the policy, connect the policy to the

city itself and show that the particular injury was incurred because of the execution of that

policy.'" *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (quoting *Coogan v. City of

Wixom,* 820 F.2d 170, 176 (6th Cir.1987)). Absent the adoption of an official policy, a

municipality may be liable if there is "persistent widespread practice of city officials or

employees which is so common in law as to constitute a custom that fairly represents municipal

policy." *Id.* at 691. A municipality cannot be held vicariously liable for the actions of its

employees. *Id*.

### 1.    Retaliatory Discharge

Kuhn alleges that Washtenaw County retaliated against him in violation of the Equal

Protection Clause of the Fourteenth Amendment by terminating his employment when he filed a

complaint against Lt. Anuszkiewicz. Defendants argue that there is no right under the Equal

Protection Clause to be free from retaliation and Kuhn has failed to plead the existence any

custom or policy that would subject Washtenaw County to municipal liability under section

1983. In his response, Kuhn does not argue against this point. The Court agrees with Defendants.

"[A] pure or generic retaliation claim simply does not implicate the Equal Protection Clause."

*Strouss v. Michigan Dep't. of Corrections*, 75 F.Supp.2d 711, 734 (E.D.Mich. 1999); *see also

R.S.W.W., Inc. v. City of Keego Harbori*  397 F.3d 427, 440 (6th Cir. 2005) ("[R]etaliation claim

does not, however, arise under the Equal Protection Clause"); *Ratliff v. DeKalb County,* 62 F.3d

338, 341 (11th Cir. 1995) ("[N]o clearly established right exists under the equal protection clause

to be free from retaliation"). Furthermore, Kuhn's complaint fails to identify a custom or practice

attributed to Washtenaw County that would subject it to municipal liability. Defendants are

entitled to judgment as a matter of law on the retaliatory discharge claim against Washtenaw

County.

####          2.         **Due Process Violation**

Kuhn alleges that Washtenaw County terminated him without providing him with notice

or an opportunity to be heard. Defendants argue that the County provided him with sufficient

notice of termination and sufficient post-termination process. Kuhn may properly assert a due

process claim if he had a recognized property interest in continued employment. *Cleveland Bd.*

*of Educ. v. Loudermill* , 470 U.S. 532, 538 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 576-

78 (1972). The discharge of an employee with such a property interest is not offensive to the

constitution when the discharge is preceded by notice and an opportunity to respond. *Cleveland*,

470 U.S. at 541-42. The tenured public employee is entitled to oral or written notice of the

charges against him, explanation of the employer's evidence, and an opportunity to be heard. *Id.*

at 546. The availability of post-termination process allows for a less formal pre-termination

process. *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 409 (6th Cir. 1992). The pre-

termination hearing does not have to be elaborate. *Morrison v. Warren*, 375 F.3d 468, 474 (6th

Cir. 2004).

Here, Defendants contend that Kuhn was given sufficient notice of his impending

discharge. Kuhn counters that the letter stated that his employment *will* terminate and not that it

*may* terminate.  Kuhn received sufficient notice of termination. Under Sheriff Tsaczk emailed

him on December 30th. The letter explained the reasons for Kuhn's termination and provided

that Kuhn's termination was effective on January 4th. Kuhn had five days to voice his concerns regarding the termination decision. Kuhn's union representative even advised Kuhn to report to work on January 3rd. Instead, Kuhn's attorney forwarded a letter stating that Kuhn would not report for work on the 4th. Kuhn was not entitled to a statement that he would not be terminated if he advanced evidence showing his fitness to work.[2] "The employee, being confronted with the charges against him or her and being offered the chance to give a version of the incident, is responsible for the choice to not offer any competing evidence." *Buckner v. City of Highland Park*, 901 F.2d 491, 496 (6th Cir. 1990). Kuhn was given several days' prior notice and could have provided reasons why his employment should not be terminated. He instead chose to provide a letter communicating his intent to not report to work.

Defendants argue that Kuhn was given sufficient pre-termination process because he could have pursued arbitration. Kuhn argues that the right to pursue arbitration lies exclusively in the discretion of the Union. Kuhn's argument fails. The Union's decision against pursuing arbitration on Kuhn's behalf does not in itself amount to a due process deprivation. *Rhoads v. Board of Educ. of Mad River Local School Dist.*, 103 Fed.Appx. 888, 898, 2004 WL 1559481, 7 (2004). Kuhn also had a right under the collective bargaining agreement to pursue his own grievances without intervention from the Union. (Def.'s Ex. 51). Kuhn grieved his termination through his Union but the Union declined proceeding with arbitration.  Arbitration was sufficient post-termination process. *See Rhoads*, 103 Fed.Appx at 896; *Morrison*, 375 F.3d at 474-76. Defendants are entitled to judgment as a matter of law on the due process violation claim.

### C.    Race Discrimination

Race discrimination cases apply the burden shifting approach articulated in *McDonnell*

---

[2] Kuhn argues that he was entitled to notice of the Under Sheriff's decision that Kuhn's discretionary leave would not be approved. Kuhn has not provided any support for this proposition that he is entitled to such notice.

*Douglas Corp. v. Green*, 411 U.S. 792 (1972).[3]  The approach requires the plaintiff to establish a *prima facie case* and create a presumption of discrimination by showing by a preponderance of the evidence: (1) that he/she belongs to a protected class; (2) that he/she was subjected to an adverse employment action; (3) that he/she was qualified for the job; and (4) that he/she was treated differently from similarly situated employees from a nonprotected class. *McDonnell Douglas,* 411 U.S. at 802; *Talley v. Bravo Pitinio Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995); *Wilcoxon v. Minnesota Mining & Mfg. Co.*, 235 Mich. App. 347, 361 (1999). Alternatively, a plaintiff could establish a prima facie case by presenting credible, direct evidence of discriminatory intent. *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111 (6th Cir. 1987).

If a plaintiff proves a *prima facie* case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802-803. Once the employer carries this burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were merely pretext for discrimination. *Id*.; *Ang v. Proctor  Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991). The plaintiff may meet this burden by showing: (1) the stated reasons had no basis in fact; (2) the stated reasons were not the actual reasons; or (3) the stated reasons were insufficient to explain the employer's actions. *Wheeler v. McKinley Enters*, 937 F.2d 1158, 1162 (6th Cir. 1991). The burden of persuasion always, however, remains with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

Defendants argue that Kuhn is unable to show that he was subject to an adverse

---

[3] Kuhn asserts a claim under 42 U.S.C. § 1981, Title VII racial discrimination, and racial discrimination under Michigan Civil Rights Act. The standard that governs Title VII cases and that governs Michigan's Civil Rights Act are the same. *See Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1011-12 (6th Cir. 1987). The same is true for the analysis required for a claim under section 1981. *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006). The Court will analyze all racial discrimination claims, both federal and state, together.

employment action, that he was qualified to work or that he was treated different than similarly

employees. Kuhn does not appear to dispute Defendants' argument as to whether he was

qualified but instead counters that there is genuine issue of material fact as to whether he was

treated differently than similarly situated employees and that the act of investigating Kuhn was

an adverse employment action.

Kuhn offers no direct evidence of disparate treatment. The Court will consider whether

Kuhn is able to establish a *prima facie* case.

The Court finds that there is an issue of material fact as to whether Kuhn was treated

differently than similarly situated employees. An employee whom a plaintiff seeks to use as a

comparable must be similarly situated in "all of the relevant respects." *Ercegovich v. Goodyear*

*Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). The failure to identify a similarly situated

employee who was treated more favorably than the plaintiff is fatal to the plaintiff's claim under

a disparate treatment theory. *Mitchell v. Toledo Hospital*, 946 F.2d 577, 583 (6th Cir. 1992). The

similarly situated employee must have the same supervisor, be subject to the same standards, and

engaged in conduct of comparable seriousness to the plaintiff. *Id.* Kuhn notes that Sgt. Radzik

was accused of groping a young man's groin area when conducting an arrest and there was no

citizen's complaint or internal investigation filed against her. Although Sgt. Radzik was not

accused of rape as Kuhn was, a jury could still find that the two were similarly situated. Sgt.

Radzik and Kuhn were accused of inappropriate conduct while on duty and both were accused of

conduct that could have had serious consequences if proven true. In addition, the allegations

against Sgt. Radzik, like those against Kuhn, were deemed unfounded. Yet, Sgt. Radzik, unlike

Kuhn, was not required to endure an internal and external investigation even after the allegations

were proven baseless.

Kuhn does not argue that the adverse action was the termination itself but rather that the investigation constituted the adverse action. The Complaint identifies the adverse action as the investigation. (Compl. ¶¶ 74, 97). The Court finds that there is no issue of material fact as to whether Kuhn was subject to an adverse employment action. The act of investigating possible employee misconduct is not an adverse action. *See Dendinger v. Ohio*, 207 Fed.Appx. 521, 527 (6th Cir. 2006) ("We have repeatedly held, however, that neither an internal investigation into suspected wrongdoing by an employee nor that employee's placement on paid administrative leave pending the outcome of such an investigation constitutes an adverse employment action"); *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) ("a suspension with pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action") (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 803 (6th Cir.2004)); *Arnold v. City of Columbus*, 2011 WL 1303593, 13 (S.D. Ohio. Mar. 31, 2011). Kuhn has not indicated how the investigation at all affected his employment. His job responsibilities and pay remained the same. He was not demoted. The Court understands that being the subject of an investigation based on false allegations may, at best, be uncomfortable and even cause mental anguish but Kuhn's claim for disparate treatment may not rest on it without a showing that some privilege or benefit of his job was changed as a result of the investigation. As previously stated, Kuhn did not experience any change in his responsibilities or pay and was not demoted.

Nor does Kuhn argue that he was qualified as a Sheriff's Deputy despite the fact that he was not at work due to stress induced from the investigation. Kuhn provides no argument. The Court finds that Kuhn is unable to demonstrate that he was qualified to work. Kuhn was on work leave for several months due to the stress of the investigation. His physician provided notes on more than two occasions indicating that Kuhn was unable to work. The last letter that Kuhn

provided Defendants stated that he was unable to work until March. In order to return to work, Kuhn was required to show that his physician had lifted work restrictions. Although advised by his union representative to return to work the day before his employment was set to terminate, Kuhn instead tendered a letter stating that he would not return to work. He is unable to show that he was qualified to work because these work restrictions were never lifted and Kuhn's decision to not return implicitly confirmed his inability to do so. Kuhn cannot establish a *prima facie* case. Defendants are entitled to dismissal on the race discrimination claims.

Kuhn makes a claim for hostile work environment under Title VII. Defendants argue that Kuhn's Title VII claim is time barred because he has failed to exhaust all administrative remedies. Defendants further argue that Kuhn is unable to establish a *prima facie* case because he has not identified any evidence showing that he was subjected to unwelcome harassment based on race or that Washtenaw County is liable for the unwelcome harassment. Kuhn does not respond to any of Defendants' arguments.

The Court finds that Kuhn's Title VII hostile work environment claim is time barred. His EEOC complaint failed to put the EEOC on notice of Kuhn's hostile work environment claims because he only alleged distinct instances of alleged discrimination. *See Jones v. City of Franklin,* 309 Fed.Appx. 938, 944 (6th Cir. 2009) (finding that the plaintiff failed to exhaust administrative remedies as to hostile work environment claim when plaintiff only alleged discrete acts of discrimination).

### D.    Retaliation

Kuhn alleges that Washtenaw County retaliated against him in violation of Title VII. A *prima facie* case under Title VII or Elliot Larsen Civil Rights Act requires: (1) that the plaintiff engaged in a protected activity; (2) the defendant knew of this exercise of plaintiff's rights; (3)

14

the defendant consequently took an adverse employment action against the plaintiff; and (4) a causal connection between the protected activity and the adverse employment action. *Balmer v. HCA, Inc.*, 423 F.3d 606, 613-14 (6th Cir. 2005); *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003).

Causation may be proven by indirect circumstantial evidence such as suspicious timing. *Mickey v. Zeidler Tool & Die Co*., 516 F.3d 516, 523, 525 (6th Cir. 2008). Temporal proximity between an assertion of Title VII rights and a materially adverse employment action is sufficient to establish a casual connection when an adverse employment action occurs very close in time after an employer learns of a protected activity. *Id.* at 525. Where the nexus is not "very close," the Sixth Circuit has declined to find a causal connection based on timing alone. *Id.* at 523. In such a case, the plaintiff must proffer additional evidence of retaliatory conduct to establish a causal connection between the protected activity and the adverse employment action. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 364 (6th Cir. 2001). A combination of evidence may include other employees' fear of retaliation, repeated comments regarding discipline, atmosphere where a plaintiff's activities were scrutinized more carefully than those of comparably situated employees, both black and white, more unwarranted criticism of plaintiff's work, and more frequent disciplinary write ups of plaintiff for trivial matters. *Id.*

Defendants argue that Kuhn is unable to show that he engaged in a protected activity or that there is a casual connection between his termination and the protected activity. Kuhn argues that he engaged in a protected activity when he complained of racial discrimination in his August 2009 email to the County Administrator Guenzel and at the September 10, 2009 meeting. He provides neither argument nor support for a causal connection between his alleged protected activity and his termination.

Kuhn cites his August 28, 2009 letter to County Administrator Bob Guenzel and
September 10, 2009 meeting as protected activity. There, Kuhn complained of knowing of other
incidents when deputies were mistreated for speaking out about leadership misconduct.
Assuming *arguendo* that Kuhn engaged in a protected activity, he has not provided any evidence
that would show that a causal connection existed between the alleged protected activity and
Kuhn's termination. In July 2009, Kuhn sent substantially the same allegations in an email he
sent to his Union representative. Kuhn copied Under Sheriff Ptaszek and Commander Heren.
Despite his allegations of knowing of incidents where other deputies were treated unfairly, the
Under Sheriff approved his request to be placed on administrative leave on August 28, 2009.
Kuhn was terminated in January 2010, several months after the email in August and meeting in
September. Even after Kuhn's August email and September meeting, Kuhn received a letter
regarding his return to work. It was not until Kuhn indicated that he continued to be unable to
work that he was given notice that his employment was terminated. The record also shows that
Defendants attempted to deduce the nature of Kuhn's accusations. When Kuhn's leave was
extended the second and final time in November 2009, Under Sheriff Ptaszek noted that Kuhn
had implied that he knew of wrongdoing. Ptaszek stated that "[w]e requested that you provide us
with the information. You refused, until the Service Complaint … was complete and unless you
had protection under the 'Whistleblower Act.'" At this time the investigation had been closed
and Kuhn was forwarded information on the Whistleblower Act. Ptsazek renewed his request for
"whatever information [Kuhn] may have" and requested a time to meet. (Def.'s Ex. 8). There is
no indication that Kuhn ever provided the information or met as requested to discuss it.  There is
no causal relationship between Kuhn's protected activity and his termination by proximity or
otherwise. Defendants are entitled to dismissal of the retaliation claim in Count VI of Kuhn's

complaint.

### E.    Whistleblower Protection Act

Defendants argue that Kuhn is unable to make out of a *prima facie* case for a violation

under the Michigan Whistleblower Act ("WPA") because he cannot show that he engaged in a

protected activity, there was a causal connection between the protected activity and his

termination, and he was not qualified for the position when he was discharged.

Section 2 of the Whistleblowers' Protection Act ("WPA"), MCL § 15.361 *et seq.*

provides in pertinent part:

> An employer shall not discharge, threaten, or otherwise discriminate against an
> employee regarding the employee's compensation, terms, conditions, location, or
> privileges of employment because the employee, or a person acting on behalf of
> the employee, reports or is about to report, verbally or in writing, a violation or a
> suspected violation of a law or regulation promulgated pursuant to the laws of this
> state, a political subdivision of this state, or the United States to a public body,
> unless the employee knows that the report is false, or because an employee is
> requested by a public body to participate in an investigation, hearing, or inquiry
> held by that public body, or a court action.

Mich. Comp. Laws § 15.362.  A "public body" is defined as, *inter alia*, "[a] state officer,

employee, agency, department, division, bureau, board, commission, council, authority, or other

body in the executive branch of state government."  Mich. Comp. Laws § 15.361(d).

To establish a *prima facie* case under the WPA, the plaintiff must show:  (1) he was

engaged in protected activity; (2) he was discharged; and (3) there was a causal connection

between the protected activity and the discharge.  *Shallal v. Catholic Soc. Serv. of Wayne

County*, 566 N.W.2d 571, 574 (1997) (citing *Terzano v. Wayne Co.*, 549 N.W.2d 606 (1996)).

Additionally, Plaintiff must show that Defendants received objective notice of his intent to

engage in protected activity.  *See Kaufman & Payton, P.C. v. Nikkila*, 503 N.W.2d 728, 732

(1993) ("[A]n employer is entitled to objective notice of a report or threat to report by the whistleblower.").

If the plaintiff is successful, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse action. *Phinney v. Perlmutter*, 564 N.W.2d 532, 558 (1997) (citing *Hopkins v. Midland*, 404 N.W.2d 744 (1987)).  If the defendant carries this burden, the plaintiff must have an opportunity to prove that the legitimate reason offered by the defendant was not the true reason, but was only a pretext for discrimination. *Id.*  The plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*

Kuhn argues that he is protected because he was "about to report such a violation to a public body" when he informed Under Sheriff Ptaszek and others that he knew of mistreated deputies and other wrongdoing. An employee is engaged in protected activity under the WPA who has reported, or is about to report, a suspected violation of law to a public body.  *Shallal*, 455 Mich. at 611, 566 N.W.2d at 575.  A plaintiff seeking to show that she was "about to" report must show by clear and convincing evidence that the defendant had notice of such an intent.  *Id.*; *see also* Mich. Comp. Laws § 15.363(4). There is a genuine issue of material fact as to whether Kuhn engaged in a protected activity. The August email indicated that he was aware of other instances of deputy mistreatment and that he would follow up after the investigation against him was resolved. After the investigation was resolved, Kuhn did not follow up. Kuhn argues that he was not ordered to reveal the basis of his accusations. There was some indication that Defendants were worried that Kuhn would sue them after Kuhn shared concerns regarding the pendency of his investigation, which prompted the calling of the September 2009 meeting. Although Kuhn

cannot expect the County to force him to follow through on his report of a suspected violation, there still remains a question regarding whether Kuhn was about to report a suspected violation and whether such activity was the cause of his termination.

Kuhn further argues that he was not deemed disabled by any doctor but only requested additional leave for his mental stress. As stated before, the physician had placed restrictions on Kuhn and Kuhn was told that he could not return to work unless those restrictions were lifted. They were not. Kuhn was not qualified to work at the time he was discharged. Kuhn would be unable to prove that he was qualified for the position and, therefore, unable to establish a *prima facie* case. Defendants are entitled to judgment as a matter of law in the WPA.

## F.    Tortious Interference

Defendants argue that Kuhn's tortious interference claim should be dismissed because Kuhn is unable to prove that he had a business expectancy with a third party or that Defendants intentionally inferred so as to induce or cause the breach/termination of his business expectancy. Kuhn does not contest this argument in his response.

A *prima facie* case of tortious interference requires: (1) a valid business relationship or expectancy, (2) defendant's knowledge of such relationship or expectancy, (3) defendant's intentional interference that induces or causes a breach or termination of the relationship or expectancy, and (4) damages to the plaintiff. *Mino v. Clio School Dist.*, 661 N.W.2d 586, 597-98 (Mich. App. Ct. 2003) (quoting *BPS Clinical Laboratories v. Blue Cross & Blue Shield of Michigan*, 552 N.W.2d 919 (1996)). The plaintiff must also show that the defendant was a third party to the business expectancy or relationship. *Reed v. Michigan Metro Girl Scout Council*, 506 N.W.2d 231, 233 (Mich. App. Ct. 1993). "It is now settled law that corporate agents are not liable for tortious interference with the corporation's contracts unless they acted solely for their

own benefit with no benefit to the corporation." *Id.*

Kuhn alleges that he had a valid business expectancy in maintaining his position with Washtenaw County Sheriff's Office. He further alleges that Lt. Anuszkiewicz intentionally interfered with Kuhn's expectancy by launching the internal investigation. At the time of the investigation, Lt. Anuszkiewicz was an agent of Washtenaw County Sheriff's Office. Kuhn has presented no evidence that Lt. Anuszkiewicz acted solely for his own benefit when launching the investigation. Defendants have provided evidence that shows that the policy at that time was to initiate an internal investigation when there was alleged misconduct from an employee. It appears that Lt. Anuszkiewicz was acting within his duties by starting the investigation. Kuhn has not presented any evidence to show that Lt. Anuszkiewicz was a third party to this expectancy and acting within his sole interest. Defendants are entitled to judgment on the tortious interference claim.

### G.    Motion to Reopen Discovery

Kuhn requests that the Court reopen discovery as to the Washtenaw County Sheriff's Offices' investigation of the complaints of alleged rape in March 2011. Given that the Court finds that Defendants' motion for summary judgment and motion to dismiss should be granted, the Court deems Plaintiff's motion to reopen discovery as to Washtenaw County's investigation cannot be granted.

### III.    CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Defendants' Motion to Dismiss and for Summary Judgment **[Docket No. 34, filed June 15, 2011]** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Reopen Discovery for Limited

Purpose **[Docket No. 97, filed September 27, 2011]** is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE**.

<u>s/Denise Page Hood</u>
Denise Page Hood
United States District Judge

Dated: April 12, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on
April 12, 2012, by electronic and/or ordinary mail.

<u>s/LaShawn R. Saulsberry</u>
Case Manager